F I L E D
CLERK, U.S. DISTRICT COURT
10/14/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: ___RYO___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 25- **2:25-cr-00828-MWC** |
|---|---|
| Plaintiff, | I N F O R M A T I O N |
| v. | [18 U.S.C. § 371: Conspiracy; 26 U.S.C. § 7206(1): Filing a False Tax Return; 31 U.S.C. § 5317: Criminal Forfeiture] |
| ALEX NGUYEN, SAM NGUYEN, and NEWPORT GOLD POST, | |
| Defendants. | |

The United States Attorney charges:

COUNT ONE

[18 U.S.C. § 371]

[ALL DEFENDANTS]

A.   INTRODUCTORY ALLEGATIONS

1.   At all times relevant to this Information:

a.   Defendant NEWPORT GOLD POST, Business A, and Business B (collectively, "Nguyen Family Businesses") were precious metals businesses based in Los Angeles, California that bought and sold precious metals. Defendants ALEX NGUYEN and SAM NGUYEN, Family Member A, and others known and unknown to the

Acting United States Attorney owned and operated the Nguyen Family Businesses.

        b.    The Bank Secrecy Act ("BSA"), codified at 31 U.S.C. § 5331 and 31 C.F.R. § 1010.330, is an anti-money laundering regulation and requires financial institutions and certain businesses ("covered entities"), including businesses involved in precious metals, precious stones, or jewels, to take affirmative steps to combat money laundering.  Under the BSA, covered entities receiving $10,000 or more in cash are required to file a Form 8300 reporting the name and other identifying information for the person providing the money.

        c.    The BSA requires covered entities to maintain appropriate procedures to ensure compliance with the BSA and to guard against money laundering.  Specifically, covered entities are required to develop and implement a written anti-money laundering ("AML") program, approved by senior management, that is reasonably designed to prevent the dealer from being used to facilitate money laundering through the purchase and sale of covered goods.  A dealer must make its AML program available to the Department of Treasury through FinCEN or its designee upon request.  The AML must, at a minimum, (1) incorporate policies, procedures, and internal controls based on the dealer's assessment of money laundering risks associated with its line of business, taking into account, inter alia, the type of products the dealer buys and sells, the nature of the dealer's customers, suppliers, distribution channels, and geographic locations, and the extent to which the dealer engages in transactions other

2

than with established customers or others subject to this rule; (2) designate a compliance officer responsible for ensuring that the AML is implemented effectively, is updated as necessary to reflect changes in risk assessment, and that appropriate personnel receive anti-money laundering training; (3) provide ongoing education and training of appropriate persons concerning the AML; and (4) provide for independent testing to monitor and maintain an adequate program.

   d. To ensure that covered entities are complying with the BSA, BSA auditors from the Internal Revenue Service audit covered entities where they educate covered entities about BSA requirements and check for compliance with the BSA.

B. <u>THE OBJECTS OF THE CONSPIRACY</u>

  2. Beginning at least in or around 2017 and continuing through at least in or around March 2022, in Los Angeles County, within the Central District of California, and elsewhere, defendants ALEX NGUYEN, SAM NGUYEN, NEWPORT GOLD POST, unindicted co-conspirator Business A, and unindicted co-conspirator Business B, together with others known and unknown to the United States Attorney, knowingly combined, conspired, and agreed with others to commit the following offenses against the United States: (a) Failure to File Reports of Currency Transactions in a Nonfinancial Trade or Business, in violation of Title 31, United States Code, Sections 5331 and 5322(b); (b) Willful Failure to Maintain an Adequate Anti-Money Laundering Program, in violation of Title 31, United States Code, Section 5322 and Title 31, Code of Federal Regulations, Section

1027.210; and (c) Making Materially False Statements, in violation of Title 18, United States Code, Section 1001.

C.  <u>THE MANNER AND MEANS OF THE CONSPIRACY</u>

3.  The objects of the conspiracy were to be carried out, and were carried out, in substance, as follows:

   a.  The Nguyen Family Businesses, including defendant NEWPORT GOLD POST, were owned and/or operated by Nguyen family members including defendants ALEX NGUYEN and SAM NGUYEN.

   b.  The Nguyen Family Businesses operated precious metal businesses where they bought and sold precious metals.

   c.  The Nguyen Family Businesses received millions of dollars in cash from third parties that required the Nguyen Family Businesses to file a Form 8300.

   d.  Defendants ALEX NGUYEN and SAM NGUYEN, and other members of the Nguyen Family Businesses, did not file the Form 8300s in order to conceal the cash transactions from the government.

   e.  Defendant ALEX NGUYEN and other employees of the Nguyen Family Businesses took millions of dollars in cash from the Nguyen Family Businesses to another precious metal business, and told the owner of that business not to file Form 8300s in order to conceal the cash transactions from the government.

   d.  Defendants ALEX NGUYEN and SAM NGUYEN, and other members of the Nguyen Family Businesses, knew that they were required to maintain an anti-money laundering program and willfully did not maintain an anti-money laundering program

4

because they deliberately did not want to know about the source of the cash being delivered to the Nguyen Family businesses.

        e.    Defendants ALEX NGUYEN and SAM NGUYEN falsely told BSA auditors that the Nguyen Family Businesses did not receive any cash, in order to conceal their willful and intentional failure to file Form 8300s and failure to maintain an anti-money laundering program.

        f.    Defendants ALEX NGUYEN and SAM NGUYEN took unreported cash received at the Nguyen Family Businesses, deposited it at a casino, and received checks from the casino that they used for personal purposes.

D.    <u>OVERT ACTS</u>

    4.    On or about the following dates, in furtherance of the conspiracy and to accomplish its objects, defendants ALEX NGUYEN, SAM NGUYEN, NEWPORT GOLD POST, unindicted co-conspirator Business A, and unindicted co-conspirator Business B, together with others known and unknown to the United States Attorney, committed and willfully caused others to commit the following overt acts, among others, within the Central District of California and elsewhere:

    <u>Overt Act No. 1</u>:  On or about March 15, 2019, defendant ALEX NGUYEN and others effectuated the delivery of $210,910 to a third-party business and that business did not file an 8300 based on an agreement not to do so with defendant ALEX NGUYEN.

    <u>Overt Act No. 2</u>:  On or about August 27, 2019, defendant ALEX NGUYEN told a BSA auditor that defendants ALEX NGUYEN and SAM NGUYEN, and Business A and Business B, did not receive any

cash for precious metal transactions, when in fact, they had received millions of dollars in cash.

Overt Act No. 3:  On or about February 27, 2020, defendant ALEX NGUYEN conducted a precious metal transaction where he received $11,766.90 in a cash at Business A and did not file a Form 8300.

Overt Act No. 4:  On September 10, 2020, in response to a customer stating that he was "cash heavy" and needed to wire money to Mexico, defendant ALEX NGUYEN told the customer that he did not want to know the customer's business or the customer's source of the cash.

Overt Act No. 5:  On October 29, 2020, defendant ALEX NGUYEN and an employee of Business A conducted a precious metal transaction where they received $32,150 in cash at Business A and did not file a Form 8300.

Overt Act No. 6:  On November 19, 2020, defendant ALEX NGUYEN conducted a precious metal transaction where he received $80,000 in cash at Business A and did not file a Form 8300.

Overt Act No. 7:  On December 18, 2020, defendant ALEX NGUYEN conducted a precious metal transaction where he received $140,000 in cash at Business A and did not file a Form 8300.

Overt Act No. 8:  On March 18, 2021, defendant ALEX NGUYEN conducted a precious metal transaction where he received $73,750 in cash at Business A and did not file a Form 8300.

Overt Act No. 9:  On May 28, 2021, defendant SAM NGUYEN conducted a precious metal transaction where she received

$18,540 in cash at defendant NEWPORT GOLD POST and did not file a Form 8300.  During the transaction, defendant SAM NGUYEN discussed future transactions and told the customer "usually if it's over a hundred thousand, it's safe.  Just call me.  Just don't say the word cash . . . Just say, hey I'm coming in with like two or three, and I'll understand like two hundred or three hundred."

Overt Act No. 10:  On July 29, 2021, defendant SAM NGUYEN conducted a precious metal transaction where she received $100,000 in cash at defendant NEWPORT GOLD POST and did not file a Form 8300.  During the transaction, defendant SAM NGUYEN stated that some of the cash she receives is buried.

Overt Act No. 11:  On February 9, 2022, defendant ALEX NGUYEN conducted a precious metal transaction where he received $20,000 in cash at Business A and did not file a Form 8300.

Overt Act No. 12:  On March 15, 2022, defendant ALEX NGUYEN and others effectuated the delivery of $311,000 to a third-party business and defendant ALEX NGUYEN caused that business to file an incomplete Form 8300.

Overt Act No. 13: On or about March 16, 2022, defendant SAM NGUYEN told federal agents that she and defendant NEWPORT GOLD POST did not receive any cash for precious metal transactions, when in fact, they had received millions of dollars in cash.

## COUNT TWO

## [26 U.S.C. § 7206(1)]

## [DEFENDANT ALEX NGUYEN]

On or about July 11, 2020, within the Central District of California, and elsewhere, defendant ALEX NGUYEN, a resident of Newport Beach, California, willfully made and subscribed to a false United States Individual Income Tax Return, Form 1040, for the calendar year 2019, which was verified by written declaration that it was made under the penalty of perjury, and which was filed with the Internal Revenue Service, which return defendant ALEX NGUYEN did not believe to be true and correct as to every material matter, in that, on such Form 1040, defendant ALEX NGUYEN reported, on line 22, that his total household income for the calendar year 2019 was $223,773, when, as defendant ALEX NGUYEN then well knew and believed, his household income for the calendar year 2019 was substantially higher that the amount he reported.

FORFEITURE ALLEGATION

[31 U.S.C. § 5317]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 31, United States Code, Section 5317, in the event of any defendant's conviction of the offense set forth in Count One of this Information.

2. Any defendant so convicted shall forfeit to the United States of America the following:

   (a) All property, real or personal, involved in the offense and any property traceable thereto; and

   (b) To the extent that such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 31, United States Code, Section 5317(c)(1)(B), any defendant so convicted shall forfeit substitute property, if, by any act or omission of said defendant, the property described in the preceding, or any portion thereof; (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or

//

//

(e) has been commingled with other property that cannot be divided without difficulty.

BILAL A. ESSAYLI
Acting United States Attorney

*/s/ Joe McNally*

JOSEPH T. MCNALLY
Assistant United States Attorney
Acting Chief, Criminal Division

KEVIN J. BUTLER
Assistant United States Attorney
Acting Chief, Major Crimes Section

CHELSEA NORELL
Assistant United States Attorney
Deputy Chief, Major Crimes Section

10